Coulson v. Hinton.

---

No. 23,281.

LIZZIE COULSON and ELI W. COULSON, *Appellants,* v. MERLE E. HINTON and L. T. HINTON, *Appellees.*

### SYLLABUS BY THE COURT.

1. LANDLORD AND TENANT — *Accounting — Amount of Judgment Incorrect — Judgment Ordered Corrected.* The record of an action involving a number of items of account between landlord and tenant, examined; obvious errors in two small items of the account corrected; and the proper judgment ordered accordingly.

2. SAME—*Order of Attachment Erroneously Issued.* The provision of the landlord and tenant act (Gen. Stat. 1915, §§ 5982-5983) which permits a landlord to sue out an attachment lien on the crops grown on the leased land where the tenant seeks to remove or does remove the crops without paying the rent, etc., does not cover the situation which arises when the lease contract provides that the tenant shall market the crop and divide the proceeds with the landlord.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed March 11, 1922. Affirmed in part and reversed in part.

*H. S. Hines,* and *W. L. Cunningham,* both of Arkansas City, for the appellants.

*C. T. Atkinson,* and *Tom Pringle,* both of Arkansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action between landlord and tenant to recover rent, damages and certain items of account. The defense was a denial of most of plaintiffs' claims, and a cross action for certain items of account.

The plaintiffs owned a farm and some live stock and farming machinery which they put into the care and keeping of the defendants under a written lease for the farming season of 1920. Among the written stipulations of the lease it was provided that the defendants were to give one-half of the crops to the plaintiffs, and to bale plaintiffs' half of the hay, and to market all perishable crops in season and pay the plaintiffs half of the proceeds. Among the machinery to be provided by the plaintiffs was a hay press, and the plaintiffs were to pay for the work of repairing all implements.

Plaintiffs' petition alleged, among other matters, that defendants failed to bale plaintiffs' half of the hay, and "that the reasonable cost to these plaintiffs in baling these plaintiffs' one-half of said hay, which would amount to about 20 acres, will be $100.00."

A variegated assortment of claims for damages for defendants' negligent attention to crops and live stock which is set up in the petition needs no attention now except—

Claim for one-half the value of melons raised and sold by defendants.. $150.00
Services of man and team four days furnished by plaintiffs.......... 16.00
Services of plaintiffs' minor son .................................... 8.00

Defendants' answer, after denying alleged matters not now in issue, admitted that they were indebted to plaintiffs for their share of melons sold, $85.59, and admitted other items of indebtedness:

Labor of plaintiffs' minor son ...................................... $8.00
Labor of man hired by plaintiffs .................................... 11.00
Groceries supplied by plaintiffs .................................... 25.81

Among the items set up in defendants' cross claim were the following:

Services for jerking corn during summer and fall for full-feeding hogs.. $40.00
Repairs for windmill ................................................ 14.96
Repairs for mowing machine .......................................... 1.60
Labor replastering house ............................................ 4.50

Defendants claimed a net balance of accounts due them in the sum of $21.31.

Issues were joined and the cause was tried before a jury. A verdict for $19.85 was returned in favor of defendants and judg-

ment was entered thereon.  The jury answered some special ques-
tions submitted by plaintiffs:

"1. What was the amount received by defendants from the sale of water
melons?  Ans: $171.18 (full amount received).

"2. What amount, if any, do you allow defendants for jerking corn during
summer and fall for full-feeding hogs?  Ans: $40.00.

"3. How much do you allow defendants for repairs to windmill?  Ans:
$14.60.

"4. How much do you allow defendants for repairs to mowing machine?
Ans: $3.65.

"5. How much do you allow defendants for repairs to house?  Ans: $4.50.

"6. How much do you find the defendants were indebted to plaintiffs not
including any off-set by defendants?  Ans: $111.40.

"7. How much do you find plaintiffs were indebted to defendants not in-
cluding the amounts which plaintiffs claim the defendants were indebted to
them?  Ans: $131.25.

"8. How much do you find was the reasonable cost to the plaintiffs,
Coulsons, of baling hay?  Ans: Nothing."

Plaintiffs appeal.  No formal assignment of errors is presented,
but a general argument is made against the net result, and some
instances of possible discrepancies in the jury's findings are dis-
cussed.  The first point plaintiffs seek to make relates to the de-
fendants' failure to bale plaintiffs' share of the hay as they were
bound to do under their written contract.  But the reason for the
failure was clearly established.  The baling machine was to be
furnished by plaintiffs.  It was out of repair.  And Eli W. Coulson,
the person with whom all the defendants' dealings with plaintiffs
were conducted, told defendants to stack the hay instead of baling
it.  Defendants did so, and consequently the jury's allowance of
"nothing" for hay baling was correct.

The next point urged by plaintiffs is based upon the fact that
defendants admitted items of indebtedness totaling $130.40, while
the jury's special finding of such indebtedness is only $111.40,
which is obviously $19.00 less than it should be.  The brief of
defendants does not answer this.

Another discrepancy urged relates to the item of $4.50 allowed
to defendants for repairs to the house.  Plaintiffs say the court in-
structed the jury not to consider that item; but that is disputed by
defendants, and a pertinent quotation is taken from the transcript
which supports their contention; and moreover, the trial court per-
mitted plaintiffs to submit a special question to the jury on that
item, which would not have been done if the item had been with-

drawn. Furthermore the defendants' evidence showed that the work was done at plaintiffs' request and upon their promise of compensation therefor.

The same answer disposes of the plaintiffs' objection to the allowance of $14.60 for repairs for the windmill. The windmill had to be repaired, and one of defendants was directed by plaintiffs to repair it. This allowance was correct.

Yet another item of allowance by the jury is complained of—$3.65 for repairs for the mowing machine. In their cross petition defendants claimed $1.60 for these repairs, and the evidence to support the claim was the account book of defendant, Merle Hinton, which read: "Repairs for the mowing machine, $1.50." Obviously, therefore, the allowance of $3.65 was too much by $2.15.

There seems to be no merit in plaintiffs' complaint at the allowance of $40 for jerking corn in the summer and fall and full-feeding the hogs. Defendants did not agree to perform these particular services. True, they were to husk the corn in season, and to feed and care for the live stock which included the hogs. But husking is done in early winter when the rush of farm work is over. Jerking corn for full-feeding of hogs is done in the late summer and autumn, when a tenant's time means a good deal to him. Moreover, defendants' evidence showed that there was a special agreement between the parties that this special service should be paid for.

The court discerns nothing further in this case which needs discussion; and only two of the discrepancies urged by plaintiffs have any merit—the finding of defendants' indebtedness to plaintiffs to be $111.40 when it should have been $130.40, and the allowance of $3.65 for repairs for the mowing machine when only $1.60 was asked and only $1.50 was proved. The total indebtedness of plaintiffs to defendants was found by the jury to be $131.25, but this includes an excess allowance of $2.15 for repairs on the mower, and so the special finding of plaintiffs' indebtedness to defendants must be reduced to $129.10. Striking a balance between the aggregate sum admitted to be due plaintiffs, $130.25, and the corrected amount due defendants, $129.10, the net result is that the sum of $1.15 is due from defendants to plaintiffs, and consequently the judgment in defendants' behalf was incorrect. That judgment is reversed and the trial court is instructed to enter judgment for plaintiffs in accordance herewith.

The plaintiffs have also brought to this court for review, and have separately abstracted and briefed for our consideration, a ruling of the trial court on a motion to dissolve an attachment which plaintiffs procured to be issued while the main cause was pending and undetermined in the trial court. The attachment was attempted to be based on that provision of the landlord and tenant act (Gen. Stat. 1915, §§ 5982, 5983) which permits attachments on behalf of the landlord where the tenant is disposing of the crops without paying his rent, etc. The evidence showed clearly that the attachment was ill-founded. The written contract of lease provided that the tenants were to market all perishable crops in season (melons) and pay half the proceeds to the landlord. There was no rent share of the perishable crops due until this special provision of the contract was executed—until the perishable crops were sold. This phase of the appeal has no merit, and the trial court's judgment thereon is affirmed.

The costs will be divided.